UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELISSA J. BUSHEY,

                              Plaintiff,
          v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                              Defendant.
_____

**DECISION
and
ORDER**

**19-CV-313F**
(**consent**)

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER, PLLC
                                Attorneys for Plaintiff
                                KENNETH R. HILLER, and
                                JUSTIN DAVID JONES, of Counsel
                                6000 North Bailey Avenue
                                Suite 1A
                                Amherst, New York  14226

                                JAMES P. KENNEDY, JR.
                                UNITED STATES ATTORNEY
                                Attorney for Defendant
                                Federal Centre
                                138 Delaware Avenue
                                Buffalo, New York  14202
                                        and
                                LAUREN ELIZABETH MYERS
                                Special Assistant United States Attorney, of Counsel
                                Social Security Administration
                                Office of General Counsel
                                26 Federal Plaza
                                Room 3904
                                New York, New York  10278
                                        and

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

FRANCIS D. TANKARD, and
NICOL FITZHUGH
Special Assistant United States Attorneys, of Counsel
Social Security Administration
Office of General Counsel
601 East 12th Street
Room 965
Kansas City, Missouri  64106

## JURISDICTION

On April 7, 2020, this matter was assigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. 13).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on August 10, 2019 (Dkt. 6), and by Defendant on November 8, 2019 (Dkt. 11).

## BACKGROUND

Plaintiff Melissa J. Bushey ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on October 1, 2015, for Social Security Disability Insurance ("SSDI") under Title II of the Act, and for Social Security Supplemental Income ("SSI") under Title XVI of the Act (together, "disability benefits").  Plaintiff alleges she became disabled on June 1, 2015, based on bipolar diagnosed in September 2015 rendering Plaintiff unable to leave the house and easily irritated, anxiety caused by crowds and being easily annoyed, depression diagnosed in May 2015 causing Plaintiff's mood and attitude to "snap easily," and being emotionally

2

disturbed as a child for which Plaintiff saw counselors all through school. AR[2] at 175, 177, 184, 216, 220. Plaintiff's applications initially were denied on December 15, 2015, AR at 80-103, and at Plaintiff's timely request, AR at 123-24, on December 6, 2017, a hearing was held in Buffalo, New York before administrative law judge Lynette Gohr ("the ALJ"). AR at 39-79 ("administrative hearing"). Appearing and testifying at the administrative hearing were Plaintiff, represented by Nicholas Divirgilio, Esq., and vocational expert Jeanne Beachler ("the VE").

On August 3, 2018, the ALJ issued a decision denying Plaintiff's claims, AR at 12-27 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council. AR at 172-74. On January 10, 2019, the Appeals Council denied Plaintiff's request for review, AR at 1-6, rendering the ALJ's Decision the Commissioner's final decision. On March 8, 2019, Plaintiff commenced the instant action seeking review of the ALJ's Decision.

On August 10, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 6) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 6-1) ("Plaintiff's Memorandum"). On November 8, 2019, Defendant moved for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching Commissioner's Brief in Support of the Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Civil Rule 5.5 for Social Security Cases (Dkt. 11-1) ("Defendant's Memorandum"). Filed on November 27, 2019, was Plaintiff's Reply to Defendant's Brief in Support of the Defendant's Motion for Judgment on the Pleadings (Dkt. 12) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on June 11, 2019 (Dkt. 4).

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Melissa J. Bushey ("Plaintiff" or "Bushey"), born December 27, 1974, was 40 years old as of June 1, 2015, her alleged disability onset date ("DOD"), and 43 years old as of March 28, 2018, the date of the ALJ's Decision.  AR at 23, 44, 177, 184, 216.  As of the December 6, 2017 administrative hearing, Plaintiff was recently married and lived with her husband, elderly, alcoholic father for whom Plaintiff is the primary caregiver, and teenage son.  AR at 46, 50-52, 56.  Plaintiff has four children, two adult daughters who did not live with her, the teenage son who did live with her, and a younger daughter of whom Plaintiff did not have custody and whom Plaintiff had not seen in years.  AR at 50-51, 56.  Plaintiff attended high school in regular classes but dropped out in the 12th grade after being arrested for harassing another student, and has not obtained a GED, but passed a certified nurse's assistant ("CNA") training course.  AR at 45-46, 221.  Plaintiff has a driver's license which until recently was suspended after Plaintiff was convicted of forging a document to avoid prosecution on a traffic ticket.  AR at 52-53, 55.  Since getting her driving privileges reinstated, Plaintiff drives daily to take her son to school and attend doctor's appointments.  AR at 53.

Plaintiff describes her activities of daily living as taking care of her elderly, alcoholic father and teenage son, AR at 50, tending to her personal care, AR at 57, housework including cleaning, doing dishes and laundry, preparing meals, feeding five

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

4

cats and three dogs, and yardwork including tending a flower garden.  AR at 57-59, 236.  Plaintiff maintains she is obsessive about cleaning which distracts her from daily stressors.  AR at 59-60, 233, 236.  Plaintiff also grocery shops and can handle money.  AR at 59.  Plaintiff socializes with her father and her brother who has seven children.  AR at 60.  Plaintiff spends time watching television with her husband, explaining she cannot go to any establishments where alcohol is served because Plaintiff remains on probation from the forgery conviction.  AR at 61-62.

Plaintiff's past relevant work experience includes working as a CNA, and at various fast food restaurants.  AR at 46-49.  Plaintiff essentially attributes her alleged inability to work to mental impairments, particularly stress and problems being around other people, AR at 66-68, as well as to guilt for being unable to raise her children.  AR at 413.

From May 15 to 18, 2015, Plaintiff was hospitalized at Olean General Hospital in Olean, New York for inpatient treatment of depression with suicidal ideation.  AR at 281-90.  Plaintiff receives primary care from Qutubuddin Dar, M.D. ("Dr. Dar"), at Dar Medical Associates in Warsaw, New York, AR at 322-63, and received psychiatric medications and outpatient counseling from Spectrum Behavioral Health ("Spectrum") where she sees psychiatric nurse practitioners Gerald Friscaro ("NP Friscaro"), and David Pfalzer ("NP Pfalzer"), licensed mental health counselors Alyssa Rodriguez ("LMHC Rodriguez"), and Leslie Tebo ("LMHC Tebo"), and clinical therapist George Brimmer ("Counselor Brimmer").  AR at 371-424, 513-649.  In connection with her disability benefits applications, on December 8, 2015, Plaintiff underwent a psychiatric evaluation on a consultative basis by psychologist Gregory Fabiano, Ph.D. ("Dr.

Fabiano"). AR at 364-68. On December 15, 2015, State agency review psychologist A. Dipeolu, Ph.D. ("Dr. Dipeolu"), reviewed Plaintiff's medical file and rendered an assessment of Plaintiff's work-related mental abilities. AR at 83-85.

## DISCUSSION

**1.        Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2. Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

     In the instant case, the ALJ found Plaintiff met the insured status requirement for SSDI through December 31, 2018, AR at 17, has not engaged in substantial gainful activity[5] since June 1, 2015, her alleged disability onset date, *id.*, and suffers from the

---

[5] The ALJ's determination that Plaintiff's brief self-employment after her asserted DOD as a personal care aide for a friend, assisting another friend in caring for his animals and taking medication, and at a fast-food restaurant did not rise to the level of substantial gainful employment, AR at 18, is not disputed.

severe impairments of attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, major depressive disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), and panic disorder, *id.* at 18, and non-severe impairments that do not result in any significant work-related functional limitations including obesity and partial thyroidectomy, *id.*, but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 18-19.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform a full range of work at all exertional levels but with several nonexertional limitations including that Plaintiff can work in a low stress work environment defined as including simple instructions and tasks, no supervisory duties, no independent decision-making, no strict production quotas, minimal changes in work routine and processes, and at most can tolerate occasional interaction with supervisors, coworkers, and the public.  *Id.* at 19-22.  Plaintiff is unable to perform any PRW, all of which required more than occasional interaction with coworkers, supervisors, or the public, yet at the administrative hearing, the ALJ elicited testimony from the VE that Plaintiff, based on her age, limited education, ability to communicate in English, and RFC, including limited to a low stress work environment defined as including simple instructions and tasks, no supervisory duties, no independent decision making, not strict production quotas, and minimal changes in work routines and processes, AR at 75-78, and in accordance with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"), could perform other work existing in significant numbers in the national economy including as an industrial cleaner, warehouse worker, and auto

detailer.  *Id.* at 22-23.  Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act.  *Id.* at 23.

      Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues that at the fourth step, the ALJ erred by failing to specifically analyze Plaintiff's stress limitations despite including a stress limitation in Plaintiff's RFC determination, Plaintiff's Memorandum at 14-19, relying solely on the consultative examiner's opinion, *id.* at 19-21, and improperly relying on Plaintiff's activities of daily living, thus failing to properly assess Plaintiff's credibility.  *Id.* 21-24.  In response, Defendant argues the ALJ reasonably concluded the record as a whole fails to support Plaintiff's assertions of a disabling mental impairment, Defendant's Memorandum at 10-17, the ALJ properly weighed medical opinions and did not solely rely on the consultative psychologist, Dr. Fabiano, *id.* at 17-25, and substantial evidence in the record supports the ALJ's finding that Plaintiff can perform other work existing in the national economy.  *Id.* at 25-27.  In reply, Plaintiff again argues the ALJ failed to conduct a proper stress analysis, Plaintiff's Reply at 1-3, solely relied on the consultative psychologist's opinion, *id.* at 3-5, and improperly relied on Plaintiff's activities of daily living and failed to explain her credibility finding.  *Id.* at 6-7.  Because Plaintiff challenges only the ALJ's determination of Plaintiff's mental RFC, the court limits its consideration to whether such determination is supported by substantial evidence in the record.

      There is no merit to Plaintiff's argument, Plaintiff's Memorandum at 14-19; Plaintiff's Reply at 1-3, that the ALJ erred by failing to specifically analyze Plaintiff's

10

stress limitations despite including a stress limitation in Plaintiff's RFC determination. As relevant, the ALJ specifically determined Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to work in a low stress work environment defined as including simple instructions and tasks, no supervisory duties, no independent decision-making, no strict production quotas, minimal changes in work routine and processes; and can tolerate occasional interaction with supervisors, coworkers, and the public.

AR at 19.

Plaintiff maintains that despite including a stress limitation in this RFC determination, the ALJ failed to include a stress analysis, *i.e.*, to "make 'specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work.'" Plaintiff's Memorandum at 15 (quoting *Stadler v. Barnhart*, 464 F.Supp.2d 183, 189 (W.D.N.Y. 2006) ("*Stadler*")). Plaintiff relies on that portion of *Stadler* where the court states that "[b]ecause stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." *Stadler*, 464 F.Supp.2d at 189 (citing Social Security Ruling ("SSR") 85-15 ("SSR 85-15"),[6] 1985 WL 56857, at *6 (S.S.A. 1985))). *Stadler*, however is inapposite to whether the ALJ in the instant case committed legal error by not further assessing Plaintiff's stress because in *Stadler*, the plaintiff, while his administrative appeal of the ALJ's decision was pending, submitted to the Appeals

---

[6] Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. Such rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

Council an RFC opinion from his treating physician stating the plaintiff had a marked impairment in his ability to respond appropriately to supervision, and that the plaintiff's condition would likely deteriorate if the plaintiff were placed under stress. *Stadler*, 464 F.Supp.2d at 188-89. In its decision denying the plaintiff's request for review, the Appeals Council failed to discuss the newly submitted RFC opinion, instead only noting the opinion's receipt but that it did not provide any basis for changing the ALJ's decision. *Id.*

In contrast, in the instant case, the ALJ thoroughly evaluated Dr. Fabiano's consultative opinion and provided a complete assessment of Plaintiff's mental impairment, treatment history, and the objective findings of record. Specifically, the ALJ observed that Dr. Fabiano's consultative opinion included that Plaintiff reported a long history of emotional problems for which Plaintiff reported a past psychiatric hospitalization and presently attends weekly outpatient counseling with monthly medication management. AR at 21 (citing AR at 364). Plaintiff's medications included lamotrigine (depression associated with bipolar), quetiapine fumarate (bipolar and depression), lorazepam (anti-anxiety), and topiramate (seizures). *Id.* Plaintiff reported sleep difficulties, depressed mood, feelings of worthlessness, crying spells, irritability, social withdrawal, suicidal ideation with no plan or intent, anxiety, difficulty concentrating and focusing, panic attacks with palpitations, sweating, breathing difficulties, and some paranoid ideation. *Id.* (citing AR at 364-65). Dr. Fabiano's mental status examination of Plaintiff was remarkable for impairment with regard to attention, concentration, and memory skills, which impairment was attributed in part to anxiety or nervousness in the evaluation setting, *id.* (citing AR at 365-66), yet Plaintiff's appearance, thought process,

12

and mood were normal. *Id.* Plaintiff confirmed a normal ability to care for her personal needs and her home, difficulty managing money, and difficult family relationships. *Id.* (citing AR at 367). Dr. Fabiano further opined Plaintiff has moderate limitations in relating adequately with others and appropriately dealing with stress, as well as mild limitation in maintaining attention and concentration. *Id.* The ALJ gave Dr. Fabiano's opinion "great weight" because it is based on personal evaluation of Plaintiff and is consistent with the treatment record and noted performance of daily activities with documented ongoing issues interacting with others and findings on mental status examinations. *Id.* (citing 364-68). Similar analysis by an ALJ has been found by this court sufficient to analyze the impact of a disability claimant's mental impairments, including stress, on the ability to perform work. *See Mack v. Comm'r of Soc. Sec.*, 2019 WL 1994279, at * 6 (W.D.N.Y. May 6, 2019) (holding ALJ did not commit legal error by not further assessing disability plaintiff's stress where the ALJ fully evaluated and discussed the consultative psychologist's opinion and provided a thorough assessment of the plaintiff's mental impairments, treatment history, and objective findings of record).

Insofar as Plaintiff suggests further analysis of Plaintiff's stress is required by SSR 85-15, Plaintiff's Memorandum at 15, as relevant, SSR 85-15 provides that

> [w]here a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15, 1985 WL 56857, at *4 (S.S.A. 1985).

Here, the ALJ's reliance on the findings and observations of Dr. Fabiano and State agency psychological consultant Dr. Dipeulo,[7] as well as the ALJ's consideration of Plaintiff's hearing testimony and objective medical evidence establishes the ALJ conducted the thorough, individualized mental RFC evaluation required by SSR 85-15. *See Reyes v. Colvin*, 2016 WL 56267, at * 6 (W.D.N.Y. Jan. 5, 2016) (affirming ALJ's mental RFC determination which did not specifically limit the claimant to "low stress work," yet relied on the findings and observations of the consultative medical sources in terms of their consideration of the plaintiff's stress-related functional limitations, along with comprehensive consideration of the hearing testimony, objective medical evidence, and treating and consultative medical source opinions). Similarly, in the instant case, the ALJ relied not only on the opinions of Drs. Fabiano and Dipeulo, but also on Plaintiff's hearing testimony, AR at 18-19 (referencing Plaintiff's hearing testimony that she did not pass her GED exam, but was able to pass her CNA test without difficulty, has worked as a care aide for several individuals and currently performs such duties for her elderly father including, *inter alia*, providing medication reminders, maintains few close friends but is recently married, and recently had her driver's license restored), and treatment notes in the record. AR at 20-21 (referencing, *e.g*, AR at 513-645 (Plaintiff reporting improved mood and ability to handle stressors with counseling); and 628-29 (August 30, 2017 report that Plaintiff was alert and attentive in counseling and

---

[7] Similar to Dr. Fabiono, Dr. Dipeolu assessed Plaintiff with the ability to understand and follow simple directions and instructions, perform simple tasks, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions without limitations, yet with mild limitations in maintaining attention and concentration, and moderate limitations in relating adequately with others and appropriately dealing with stress. AR at 85.

14

expressed she thought she would benefit from employment but was concerned as to how feasible employment outside the home would be because of her obligations to care for her father). Accordingly, the ALJ did not err in failing to further assess the effect of Plaintiff's stress on her ability to work and remand on this ground is not warranted.

Nor did the ALJ err by relying solely on the consultative examining psychologist's opinion as Plaintiff's argues, Plaintiff's Memorandum at 19-21; Plaintiff's Reply at 3-5, but, as Defendant maintains, Defendant's Memorandum at 17-20, properly weighed such medical opinions including that of consultative psychologists, Dr. Fabiano, and Dr. Dipeolu. *See* AR at 21-22. Significantly, Drs. Fabiano and Dipeolu, as psychologists, are the only medical sources in the record whose opinions are acceptable according to the relevant regulations.[8] *See* 20 C.F.R. §§ 404.1527(f), 416.927(f). *See Monroe v. Comm'r of Soc. Sec.*, 2016 WL 7971330, at *7 (N.D.N.Y. Dec. 29, 2016), *report and recommendation adopted*, 2017 WL 318838 (N.D.N.Y. Jan. 23, 2017) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."). Nevertheless, the ALJ was free to prefer the opinion of Dr. Fabiano over Dr. Dipeolu, explaining he did so because Dr. Dipeolu did not examine Plaintiff. AR at 21. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) ("Under this 'very deferential standard of review'

---

[8] Although Dr. Dar, as a medical doctor, is also considered a medical source, Dr. Dar is Plaintiff's primary care physician and did not provide any assessment the impact of Plaintiff's mental impairments on her ability to perform basic work activities.

15

[applicable to actions challenging an administrative decision on a disability benefits claim], 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*'" (bracketed text added) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

Nor is there any merit to Plaintiff's argument that the ALJ, by relying on Plaintiff's activities of daily living, improperly assessed Plaintiff's credibility.[9]  Plaintiff's Memorandum at 21-24; Plaintiff's Reply at 6-7.  It is the function of the ALJ, not the court, to assess the credibility of witnesses.  *See Tankisi v. Commissioner of Social Security*, 521 Fed. Appx. 29, 35 (2d Cir. 2013).  Pain or other symptoms may be important factors contributing to a disability claimant's functional loss and affects a claimant's ability to perform basic work activities where relevant medical signs or laboratory findings show the existence of a medically determinable impairment that could "reasonably" be expected to cause the associated pain or other symptoms including those associated with mental impairments.  20 C.F.R. § 404.1529(c)(3).  "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms." *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v.*

---

[9] The court notes that in 2016, the Commissioner rescinded SSR 96-7p pertaining to the evaluation of symptoms, including subjective symptoms, in determining disability claims, replacing it with SSR 16-3p which eliminated the term "credibility" from "sub-regulatory policy," replacing the term "credibility" with "consistent with the objective medical evidence and other evidence of record," thereby clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). Nevertheless, "'[t]he standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term 'credibility' is no longer used.'" *Robert R. v. Saul*, 2019 WL 4183569, at *11 n. 3 (W.D.N.Y. Sept. 4, 2019) (quoting *Debra N. v. Comm'r of Soc. Sec.*, 2019 WL 1369358 at *7, n. 9 (N.D.N.Y. Mar. 26, 2019)).

*Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)). Nevertheless, that ALJ "is not require[d] to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). Such other evidence includes a claimant's activities of daily living. *Sloan v. Colvin*, 24 F.Supp.3d 315, 328-29 (W.D.N.Y. Sept. 30, 2020) (no remand where ALJ evaluated the plaintiff's credibility based on the plaintiff's testimony, activities of daily living, and conflicting medical evidence). Further, "'[b]ecause the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence.'" *Simmons v. Comm'r of Soc. Sec.*, 2020 WL 4597316, at *5 (W.D.N.Y. Aug. 10, 2020) (quoting *Baker ex rel. Baker v. Berryhill*, 2018 WL 1173782, at *5 (W.D.N.Y. Mar. 6, 2018) (internal quotation marks omitted)).

Here, despite finding Plaintiff suffers from several mental impairments, and incorporating a low stress restriction in the RFC determination, the ALJ also found Plaintiff's self-reported activities are not entirely consistent with her allegation of total disability, including that despite treatment notes showing Plaintiff with significant stress with regard to her family relationships and caring for her elderly, ailing father, Plaintiff has expressed a desire to obtain employment, is able to care for her father, and also provides care to a friend on a daily basis, all which constitute significant daily activities that are not consistent with her claim she is unable to work. AR at 21. *See Cage v.*

*Comm'r of Soc. Sec.*, 692 F.2d 118, 127 (2d Cir. 2012) (reviewing court must "defer to the Commissioner's resolution of conflicting evidence."). Moreover, under such deferential standard of review applicable to a district court's review of an ALJ's determination of a social security disability claim, substantial evidence in the record may support two contrary rulings. *See McIntyre v. Colvin*, 758 F.3d 146, 148 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). Thus, even assuming the sincerity of Plaintiff's perceived restrictions on her ability to work outside the home, the ALJ did not err in assessing the consistency between Plaintiff's alleged disability and her self-reported activities of daily living.

Contrary to Plaintiff's final argument, Plaintiff's Memorandum at 25-27, substantial evidence in the record also supports the ALJ's finding that Plaintiff can perform other work existing in the national economy. Once the ALJ finds a claimant is unable to perform her PRW, the burden shifts to the ALJ to show there is work in the national economy the claimant can perform and the ALJ is not required to present to the VE hypotheticals that include limitations the ALJ determines are not supported by the record. *See Smith v. Berryhill*, 740 Fed.Appx. 721, 726-27 (2d Cir. 2018) ("The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC *determined by the ALJ* in the fourth step of the sequential analysis.) (italics in original) (citing 20 C.F.R. § 404.1546(c)). Further, as discussed, Discussion, *supra*, at 9, the ALJ incorporated into the hypotheticals presented to the VE the mental limitations endorsed by Dr. Fabiano. *See Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011) (the report of a consultative psychologist may constitute

18

substantial evidence). The ALJ thus did not err at step five in determining work exists in the national economy that Plaintiff, despite her RFC and mental impairments, can perform.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 6) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:  October 7th, 2020
        Buffalo, New York